NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

RICKY ORDWAY, *Appellant.*

No. 1 CA-CR 23-0543

FILED 08-07-2025

Appeal from the Superior Court in Maricopa County
Nos.  CR2019-005766-001, CR2019-122267-001, CR2021-002307-001
The Honorable Kathleen H. Mead, Judge, *Retired*
The Honorable Peter A. Thompson, Judge
The Honorable Jeffrey A. Rueter, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Rebecca Jones
*Counsel for Appellee*

Apfel Law Group, Phoenix
By Seth M. Apfel
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Daniel J. Kiley delivered the decision of the Court, in which Presiding Judge Angela K. Paton and Judge Brian Y. Furuya joined.

---

**K I L E Y**, Judge:

¶1        Ricky Ordway appeals his convictions and sentences for aggravated assault and attempted molestation. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        We view the evidence "in the light most favorable to upholding the jury's verdicts." *State v. Copeland*, 253 Ariz. 104, 108, ¶ 2 (App. 2022) (citation omitted).

¶3        At all relevant times, Ordway was a fifth-grade teacher at an elementary school in Peoria. Ordway described himself as "playful" with his students, explaining that he liked to "poke" them "in the ribs," "flip[] [their] ponytails," and "tickle" them by "squeez[ing]" their knees.

¶4        At various times over the course of nearly two years, Ordway would invite girls, but never boys, up to his desk to sit next to him during class. On numerous occasions when the rest of the class was occupied watching a video or working on assignments, Ordway would caress the thigh of the girl sitting next to him. K.W., for example, testified about an occasion when she was sitting next to Ordway at his desk while the class watched a movie.[1] K.W. stated that Ordway put his hand on her thigh and began "[m]oving it . . . [s]lowly." She "didn't feel comfortable," she testified, and when Ordway was distracted by disruptive students in the back of the classroom, she returned to her assigned seat. M.M. likewise testified about an occasion when she was sitting in a chair next to Ordway at his desk while the class watched a video. Ordway put his hand "[r]ight above the knee," she stated, then "started rubbing in a circular motion on [her] thigh" while he "slid" his hand "upwards" until his fingers made "a brushing motion" against her "genitals."

---

[1] We use initials to protect the identities of victims. Ariz. R. Sup. Ct. 111(i).

¶5          Ordway's actions came to the attention of school officials when a student overheard two of Ordway's students, E.D. and M.C., talking about Ordway "putting his hand down [their] pants." This student reported the allegation to her mother, who called the school principal, Stephen Balliet. Balliet contacted E.D.'s family, then the Peoria Police Department. Officers reached out to the families of the children to arrange forensic interviews.

¶6          Concurrently with these reports, K.W. told her mother that Ordway asked her to stay for after-school detention in his classroom. Aware that students generally spent after-school detentions in a group setting in the school library, K.W.'s mother "didn't feel comfortable" with K.W. spending detention alone with her teacher. K.W. and her mother spoke with Balliet to express their concerns about Ordway.

¶7          After an investigation, Ordway was charged with multiple offenses against 15 victims, including offenses against his daughter which occurred at home. The counts involving Ordway's daughter were severed for trial.

¶8          Meanwhile, some of the victims and their families filed a civil suit for damages against Ordway and the school district. Before trial, Ordway moved *in limine* for permission to question those victims about the civil suit. "Evidence that an alleged victim has instituted a civil lawsuit against the defendant for money damages," he argued, "bears on [her] credibility" by showing a possible "bias on the part of the victim." The trial court granted Ordway's motion.

¶9          Trial began in March 2023. At trial, multiple victims testified, as did the investigating detective and the forensic interviewers. The State also called, as an expert witness, Wendy Dutton, Ph.D., a psychologist with extensive experience in providing treatment to sex offenders and victims. Dutton testified, among other things, that abusers often use "physical contact" such as "tickling games" and other "horseplay" as a means to "introduce sexuality into the relationship."

¶10          Ordway called university professor and psychologist Bradley McAuliff, Ph.D., as an expert witness. McAuliff testified, among other things, that girls "on the cusp of puberty" are particularly sensitive to the "approval" of "peer groups," and may use rumors as a kind of "social commodity" to win attention and acceptance. McAuliff further testified that hearing rumors may change children's "perception" of innocent behavior, leading them to interpret "non-sexualized behaviors" like "poking or

flipping a ponytail" as "sexually motivated and even sinister when they are not."

¶11      Ordway testified in his own defense. He admitted that girls sometimes sat next to him at his classroom desk. When asked why boys never sat with him, Ordway responded, "I don't think the boys [would] want to put themselves out there as being a teacher's pet." Ordway admitting touching the legs of some of the girls when they sat next to him, describing his touch as "a hello squeeze" on the "knee" designed to "elicit a tickle response." He denied, however, touching any girl on the thigh, and further denied touching a girl with sexual interest or with the intent to injure, insult or provoke.

¶12      The jury found Ordway guilty of eight counts of aggravated assault and three counts of attempted molestation. On two of the aggravated assault counts, the jury found that the offense was sexually motivated. The jury acquitted Ordway on the remaining 17 counts. At sentencing, Ordway requested that his sentences run concurrently, while the State argued that the sentences for all counts should run consecutively. Citing in part "the totality of the circumstances," the superior court sentenced Ordway to consecutive sentences, totaling 16 years, with two probation terms to follow.

¶13      Ordway timely appealed. We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, -4033(A)(1).

## DISCUSSION

I.     **Alleged Errors in Jury Instructions**

    A.    **Curative Instruction During Voir Dire**

¶14      During voir dire, the prosecutor asked prospective jurors, "[I]s there anybody who is unwilling to give any weight to the fact that there are 14 victims in this case?" Ordway objected to the question before any jurors answered. At a sidebar conference, the prosecutor withdrew the question. Ordway moved for a mistrial, which the court denied. Before voir dire ended, Ordway moved to strike "the whole panel . . . because of the taint from" the prosecutor's suggestion that "the number of accusers should have [evidentiary] weight." The court agreed that the prosecutor's question was "improper," but declined to strike the panel, reasoning that appropriate jury instructions "would cure any taint." Ordway then requested the following curative instruction:

The fact that there are multiple alleged accusers in this case has no bearing on whether the defendant is guilty of the charges. You must not think the defendant is guilty of any one offense or the offenses because there are multiple alleged accusers. Instead, you must consider each charge independently of all other charges and consistently with all other instructions you are given.

¶15 The State contended that no curative instruction was needed. Rejecting each party's position, the court gave the jurors the "separate counts" instruction found in Revised Arizona Jury Instruction ("RAJI") Standard Criminal 30 (6th ed. 2022), which reads as follows:

Each count charges a separate and distinct offense. You must decide each count separately on the evidence with the law applicable to it, uninfluenced by your decision on any other count. You may find that the State has proved beyond a reasonable doubt, all, some, or none of the charged offenses. Your finding for each count must be stated in a separate verdict.

RAJI Stand. Crim. 30. (separate counts).

¶16 Ordway contends that the court erred in failing to cure the State's "improper[] suggest[ion]" during voir dire that the "mere fact that there were fourteen alleged victims" constituted "evidence of Ordway's guilt." Ordway acknowledges that "there is nothing incorrect" about the RAJI "separate counts" instruction that the court gave but insists that the instruction was insufficient to "cure" the "taint" from the "improper" question. "We review a trial court's decision to give a jury instruction for an abuse of discretion." *State v. Ewer*, 254 Ariz. 326, 329, ¶ 10 (2023) (quotation omitted).

¶17 As the court correctly noted, the prosecutor's question improperly suggested that the number of accusers was a fact that was entitled to evidentiary weight. But the question was withdrawn before it was answered, and the court denied Ordway's motion for a mistrial. We must defer to the court's implicit determination that the unanswered question did not, as Ordway maintains, "taint" the jury. *See State v. Newell*, 212 Ariz. 389, 402, ¶ 61 (2006) (citations omitted) (observing that "the trial court is in the best position to determine the effect of a prosecutor's comments on a jury").

¶18        Moreover, the "separate counts" instruction correctly told the jurors that the evidence in support of each count must be assessed separately. We presume, of course, that jurors follow the court's instructions. *State v. Prince*, 204 Ariz. 156, 158, ¶ 9 (2003) (citation omitted). We need not rely solely on presumptions here, however; the fact that the jurors acquitted Ordway of 17 of the 34 counts makes clear that they did, in fact, weigh the evidence on each count individually. *Cf. State v. Stuard*, 176 Ariz. 589, 600 (1993) (rejecting defendant's argument that court erred in refusing to sever counts due to danger of unfair prejudice and noting that the fact that the jury acquitted defendant of several counts demonstrated that "the jury followed the judge's instructions and considered the evidence separately on each charge"). We conclude that the RAJI "separate counts" instruction sufficiently resolved any potential prejudice from the question that the prosecutor posed and then withdrew during voir dire. Ordway has not shown that the court abused its discretion by not giving his proposed curative instruction instead.

## B.        The Court's Answer to the Jurors' Question

¶19        The final instructions told the jurors, among other things, that knowingly touching the victim "with the intent to injure, insult or provoke" is an element of aggravated assault. *See* A.R.S. §§ 13-1203(A)(3), -1204(A)(6). During jury deliberations, the jury submitted a question to the court asking for a "clarifying definition" of "injure, insult, or provoke," adding, "Would these need to be in a positive or negative response?" The State proposed giving the jurors a definition of those terms based on "their ordinary meanings" as set forth in *State v. Guzman-Castro*. 2 CA-CR 2016-0373, 2018 WL 2143252, at *2, ¶ 6 (Ariz. App. May 9, 2018) (mem. decision) (quoting definitions of "injure," "insult," and "provoke" found in American Heritage Dictionary). Stating, "I don't think it's proper to go to dictionary definitions," Ordway urged the court to simply "refer [the jurors] back to the jury instructions." The court accepted the State's suggestion, telling the parties:

> I'm going to indicate to the jury there is no further statutory definition of insult, injure, or provoke; and then I'm going to indicate in those circumstances . . . statutorily undefined words must be construed according to their common approved use of language.

> The court went on to state,

I'm going to give [*sic*] injure means to cause physical harm to
or hurt and cause distress to; insult means to treat with gross
insensitivity, insolence, or contemptuous rudeness and . . . to
affront or demean; and provoke means to incite anger or
resentment or disturb to action or feeling.[2]

**¶20**      Ordway argues the trial court abused its discretion in its
response to the jury's request for a definition of "insult, injure, or provoke."
Challenging only the court's definition of the word "provoke," Ordway
argues, first, that "[b]y defining the term, the trial court invaded the
province of the jury by interposing its own definition."

**¶21**      A trial court's response to a jury question is reviewed for an
abuse of discretion. *State v. Fernandez*, 216 Ariz. 545, 548, ¶ 8 (App. 2007)
(citation omitted).

**¶22**      At trial, Ordway asked the court to respond to the jury's
question simply by referring them back to the instructions they had already
been given. Since those instructions did not include a definition of
"provoke," Ordway's proposal would have left the jury's question
unanswered. The court did not abuse its discretion in rejecting Ordway's
suggestion to ignore the jury's request for help. *See* Ariz. R. Crim. P. 22.3(b)
("If, after the jury retires, the jury . . . requests additional instructions, the
court may . . . further instruct the jury as appropriate."); *State v. Ramirez*,
178 Ariz. 116, 126 (1994) ("The decision to further instruct a jury on a matter
. . . is within the trial court's discretion." (citation modified)).

**¶23**      Ordway next argues that the court's definition of "provoke"
— which included the phrase "disturb to action or feeling" — was overly
broad. According to Ordway, "any touching of any nature," including "a
pat on the back" or a "celebratory hand slap," might "arouse[] feeling of
some kind." "[T]he offense of assault," he goes on, "is not intended to
encompass . . . these sorts of touchings," but only "touching motivated by
a negative intent of some kind." As a result, the court "misstated the law"
by telling the jurors they could convict Ordway based on physical touch
without "any evidence of negative intent."

---

[2] The record contains no copy of the written response to the jury question,
evidently because it was "lost or inadvertently destroyed." But neither
party disputes that the court's statement to the parties accurately reflects
the content of the court's written response to the jurors.

¶24        A term not defined by statute is generally construed in accordance with its ordinary meaning, which, in turn, may be determined by reference to the dictionary. *In re Drummond*, 257 Ariz. 15, 18, ¶ 7 (2024) ("Absent a statutory definition, courts generally give words their ordinary meaning and may look to dictionary definitions." (citation omitted)). The definition of "provoke" that the court gave is consistent with its ordinary meaning. *See, e.g.*, *Provoke*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/provoke (last visited Jul. 15, 2025) (defining "provoke" as "to call forth (a feeling, an action, etc.), evoke; to stir up purposely; to provide the needed stimulus for; to incite to anger; to arouse to a feeling or action").

¶25        Further, we may consider counsel's closing arguments in assessing the potential harm from purportedly erroneous or inadequate jury instructions. *See State v. Bruggeman*, 161 Ariz. 508, 510 (App. 1989) ("Closing arguments of counsel may be taken into account when assessing the adequacy of jury instructions." (citations omitted)); *cf. State v. Fierro*, 254 Ariz. 35, 41, 44, ¶¶ 17, 34 (2022) (holding that "[e]ven though the court improperly instructed the jury" that defendant "could be found guilty of attempted second degree murder without intending to kill," erroneous instruction caused no prejudice because "the prosecutor repeatedly made clear the jury had to find an intent to kill"). The closing arguments of both parties made clear that the jurors could not properly convict Ordway of aggravated assault without considering his motivation for touching the victims. Ordway's counsel, for example, argued that to convict him of aggravated assault, the jurors had to find beyond a reasonable doubt that he touched the victims with a "sexual motivation" rather than a "playful" or "joking" manner.

¶26        The State took the same position, arguing at length that the evidence showed that Ordway had "a sexually motivated reason" for touching the thighs of the girls he invited to sit next to him at his desk. Referring to Dutton's testimony, the State argued that Ordway instituted a "culture of physical touching" in his classroom, which included "touching" his students' "hair" and "squeezing" their knees, in order to "break down . . . resistances and . . . emotional barriers to physical touching with these girls" to "get them to the point of victimization." Citing Dutton, the State argued that "the process of victimization" may begin with "open touching," such as "flipping hair or zipping ribs," before "progress[ing]" to "the actual assault" that occurs "behind the desk." Both parties argued, in other words, that Ordway could not be found guilty based merely on innocent physical contact.

8

**¶27**        Because the jury "received the information necessary to arrive at a legally correct decision," the court did not abuse its discretion when it provided a definition of the word "provoke" at the jury's request. *See Fernandez*, 216 Ariz. at 548, ¶ 8 (citation omitted).

II.    **Evidentiary Rulings**

**¶28**        Ordway contests a variety of the superior court's evidentiary rulings. We review evidentiary rulings for an abuse of discretion and will uphold a ruling if supported by reasonable evidence. *State v. Salamanca*, 233 Ariz. 292, 294-95, ¶ 8 (App. 2013).

A.    **Preclusion of Evidence of Allegations Against Others**

**¶29**        At trial, Ordway sought to admit evidence of unfounded accusations against other male teachers and staff at the school to establish the school's "culture of complaints" which would, in turn, undermine "the credibility of the alleged victims." The court precluded Ordway from introducing "evidence that there were false allegations made against other teachers," finding the evidence irrelevant. Ordway now argues that precluding this evidence "depriv[ed] him of the opportunity to present a complete defense" by showing that "accusations ran rampant" at Ordway's school, with "[e]very male teacher and/or staff member" being, at one time or another, "the subject" of baseless "complaints" and "allegations."

**¶30**        Under Rule 401, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Ariz. R. Evid. 401. Irrelevant evidence is not admissible. Ariz. R. Evid. 402. We review a court's relevance determination for abuse of discretion. *State v. Rose*, 231 Ariz. 500, 513, ¶ 59 (2013) (quotation omitted).

**¶31**        Evidence of false allegations against other teachers and staff may have been relevant if those false allegations were made *by Ordway's accusers*. Evidence that Ordway's accusers had previously made false claims against others might, in other words, bear on their credibility or intent to fabricate. *See* A.R.S. § 13-1421(A)(5) (setting forth conditions that must be met for admission of "[e]vidence of false allegations of sexual misconduct made by the victim against others"); *see also State v. Beeler*, 2 CA-CR 2020-0131, 2023 WL 3031317, at *2-5, ¶¶ 10-21 (Ariz. App. Apr. 20, 2023) (mem. decision) (evaluating the admissibility of alleged victim's prior false allegations of sexual misconduct made against others under A.R.S. § 13-1421); *cf. State v. Parkinson*, 258 Ariz. 601, 608-09, ¶ 23 (App. 2024) (citation omitted) (holding that "evidence of [victim's] prior alleged fabrications"

against defendant, "if credited by the jury, could have established her possible motive, plan, and intent to fabricate" the allegation giving rise to the pending charge). But nothing in the record suggests that the false allegations Ordway sought to admit were made *by the victims in this case*. Without such a showing, the superior court did not err in precluding, on relevance grounds, evidence of unfounded allegations that *other* students may have made against *other* teachers and staff.

¶32          Ordway also challenges the court's determination, in the alternative, that Rule 403 bars the admission of evidence of false allegations that other students made against other teachers and staff. Because we affirm the court's determination that such evidence was irrelevant, we need not address the court's reliance on Rule 403 as an alternative basis to preclude this evidence. *State v. Bigger*, 227 Ariz. 196, 209, ¶ 44 (App. 2011) ("Because the court did not abuse its discretion in excluding the evidence based on relevance, we need not address whether it otherwise was inadmissible under Rule 403." (citation omitted)).

### B.          Preclusion of Evidence of Rumors About Ordway

¶33          At trial, Ordway sought to present the testimony of students who reported hearing "outrageous" rumors about him, such as rumors that he raped a student at gunpoint and that police officers found a whip in his classroom. The court permitted Ordway to introduce evidence that he was the subject of unflattering rumors, including a rumor that he was "a pervert," but precluded evidence of rumors about Ordway's purported rape at gunpoint and possession of a whip. Ordway now argues that the court erred in precluding him from eliciting evidence of "the details of the rumors," asserting that the rumors were so transparently false that they undermine "the credibility of the alleged victims" in this case. Even if these outlandish rumors did not originate with the victims, Ordway maintains, they were nonetheless admissible to "demonstrate[] the capacity for girls of the age of the victims" to fabricate "vicious, sexually charged and very detailed rumors about a teacher."

¶34          The record refutes Ordway's claim that he was denied the opportunity to challenge the credibility of the victims with evidence of "the capacity" of "girls" their age to make baseless allegations of a sexual nature. On the contrary, Ordway elicited testimony from his expert witness, McAuliff, that preteen girls' suggestibility and their desire for status among their peers may lead them to both misinterpret innocent behavior and make wholly unfounded allegations.

¶35          But no evidence in the record suggests that any of the victims in this case spread any rumor about Ordway committing rape at gunpoint or keeping a whip in his classroom. Nor does any evidence indicate who the source of these rumors was. Absent such evidence, these specific rumors could prove nothing about the credibility, or the state of mind, of the testifying victims. The court did not abuse its discretion in precluding evidence of the details of outlandish rumors about Ordway that originated with unidentified sources.

### C.          Cross-Examination Concerning Allegations in Complaint filed in the Civil Lawsuit

¶36          At trial, Ordway's attorney cross-examined four victims about the civil suit their families filed against Ordway and the school district. Specifically, defense counsel asked A.A., E.D., T.H., and I.V. if their families had filed a $25 million lawsuit against Ordway and the school district. Each replied that she was unaware of the lawsuit against Ordway. Evidently referring to specific allegations in the civil complaint, Ordway's attorney (1) asked A.A., T.H. and I.V. whether Ordway ever gave them expensive gifts, (2) asked E.D., T.H. and I.V. whether Ordway had students sit on his lap, (3) asked T.H. whether Ordway ever "cup[ped her] breast in front of the whole class," and (4) asked T.H. whether Ordway ever unbuttoned her pants. Each victim answered each of these questions in the negative. When defense counsel attempted to ask Ordway about those same allegations, the court sustained the State's objection, ruling that allegations in the civil complaint could not "be attributed to an individual victim" as "prior inconsistent statements," and so were inadmissible hearsay.

¶37          Ordway now argues that the court erred in failing to allow him to question these four victims about specific allegations in the civil complaint. Restricting the scope of his cross-examination of the victims, he contends, denied him his right under the Confrontation Clause to confront his accusers. *See* U.S. Const. amend. XI.

¶38          Although the Confrontation Clause guarantees defendants the right to confront witnesses against them, it does not entitle them to unfettered cross-examination. *See Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) ("The Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (citation modified)). Thus, while the Confrontation Clause "protects a defendant's ability to prove a witness's motive or bias," it does not deprive trial courts of their "wide

latitude to impose reasonable limits on cross-examination" to avoid, "among other things, confusion of the issues." *State v. Almaguer*, 232 Ariz. 190, 197-98, ¶ 22 (App. 2013) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). We review rulings that implicate the Confrontation Clause de novo. *Id.* (citation omitted).

¶**39**      Ordway asserts that the allegations in the civil complaint were not hearsay because they were not being offered for their truth. Instead, he asserts, he sought to offer evidence of the allegations in the civil complaint to "impeach . . . [the] credibility of [the] victims by showing the inconsistency of their claims." Accordingly, he contends, the allegations in the complaint were admissible as the victims' prior inconsistent statements because the complaint "reflect[s] statements" that "the victims and/or their parents" made to counsel in the civil suit.

¶**40**      We acknowledge the general rule that "statements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney." *Williams v. Union Carbide Corp.*, 790 F.2d 552, 555-56 (6th Cir. 1986) (quotation omitted) (citing cases). That principle does not apply here, however, since the victims testified they were unaware of the civil suit. Ordway cites no authority, and we are aware of none, for the proposition that a child-victim's testimony may be impeached with statements in a pleading filed by an attorney retained by the child's parents.

¶**41**      Here, the court permitted Ordway to question victims about the civil suit that their families filed, including the $25 million in damages being claimed. Such inquiry was proper to establish a potential motive for the witnesses to lie. *See State v. Gertz*, 186 Ariz. 38, 42 (App. 1995) ("Evidence of a civil action by a complaining witness against the defendant, arising from the same transaction that is the subject of the prosecution, has a direct bearing on the credibility of the witness to show bias and prejudice." (citation modified)). Further, Ordway was able to question A.A., E.D., T.H. and I.V. about specific allegations in the civil complaint (which they denied). In the absence of evidence that the individual victims themselves were the source of the allegations in the complaint, the court did not abuse its discretion in barring Ordway from testifying about those allegations to impeach the victims' testimony. *Cf. Spears v. Adamson*, 3:04-CV-00087, 2009 WL 948543, at *1 (D. Nev. Apr. 6, 2009) (applying federal evidence law, court held that defendant could not impeach Spears's testimony with allegations in complaint filed on behalf of Spears and two other plaintiffs "without some showing that the statements at issue in the complaint are attributable to [Spears]").

### D. Admission of Portions of Forensic Interviews

**¶42** After T.H. and E.D. testified on direct examination about Ordway's conduct, Ordway asked each, on cross-examination, about the $25 million suit their families filed. The State then sought leave to play portions of the recording of their forensic interviews to "rebut" Ordway's "express or implied charge" that they had "recently fabricated" their allegations. *See* Ariz. R. Evid. 801(d)(1)(B)(i). Finding that Ordway's cross-examination "implied" that T.H. and E.D. were testifying "in support of [the] lawsuit" and the "financial rewards" they hoped to reap, the court permitted the State to play portions of their forensic interviews. Ordway now argues that the superior court abused its discretion by allowing the State to publish segments of the forensic interviews with T.H. and E.D. as prior consistent statements under Arizona Rule of Evidence ("Rule") 801(d)(1)(B)(i).

**¶43** Rule 801(d)(1)(B) defines, as non-hearsay, a declarant-witness's prior consistent statement when that statement is offered "to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying." Ariz. R. Evid. 801(d)(1)(B)(i).

**¶44** Ordway argues that Rule 801(d)(1)(B)(i) does not apply here because, he maintains, he never claimed that "the victims' stories were *recent* fabrications." On the contrary, he asserts, his position "from the outset of trial was that the alleged victims' stories were always fabrications." Relying on case law holding that "a prior consistent statement" is admissible only if the statement was "made before the motive to fabricate arose," *State v. Yonkman*, 233 Ariz. 369, 376, ¶ 26 (App. 2013) (citation omitted), Ordway contends that the victims' statements during their forensic interviews were not admissible as "prior consistent statements" because they intended to falsely accuse Ordway all along, and so their motive to lie predated their forensic interviews.

**¶45** Before trial, Ordway successfully argued that evidence of the civil suit was relevant and admissible because it would show that the victims had a pecuniary motive to lie about him. Because Ordway expressly linked the victims' motive to lie to their civil suit, Rule 801(d)(1)(B) authorized the admission of prior consistent statements they made before the suit was filed. *See In re Maricopa Cnty. Juv. Action No. JV-133607*, 186 Ariz. 198, 201 (App. 1996) (quotations omitted) (noting that questioning that "raise[s] an inference" that "the witness had a reason to fabricate her story later" permits admission of prior consistent statement); *see also United States*

*v. Gonzalez*, 533 F.3d 1057, 1062-63 (9th Cir. 2008) (holding that trial court did not err in permitting investigating officer to testify about victim's statements when reporting the assault; defense counsel's cross-examined victim about her "pending civil case" to "suggest a mercenary purpose," and so "[t]he officer's account of her story was properly admissible" under Federal Rule of Evidence 801(d)(1)(B)). While Ordway was able to (and did in fact) argue to the jury that the victims were lying all along, the trial court did not abuse its discretion in determining that Ordway's introduction of evidence of the $25 million civil suit filed on behalf of the victims entitled the State to present evidence of consistent statements they made before the suit was filed.

¶46        In any event, any error in the admission of portions of the forensic interviews of T.H. and E.D. was harmless in view of the fact that those portions of their forensic interviews were cumulative to their trial testimony and both witnesses were extensively cross-examined on the matter. *See State v. Hoskins*, 199 Ariz. 127, 144, ¶ 66 (2000) (citation omitted) (holding that any error in admitting evidence of witness Nelson's prior consistent statements was harmless "because all aspects of Nelson's prior statements were included in Nelson's own testimony, and Nelson was subjected to thorough cross-examination").

¶47        M.V. frequently responded to questions posed on direct examination by stating, "I don't remember." After she described an occasion when Ordway "rubb[ed]" her thigh "up and down" while she sat with him at his desk, for example, M.V. was asked if something similar happened a second time. She replied, "I don't remember." After she reviewed a transcript of her forensic interview, M.V. testified that she still did not recall whether Ordway touched her thigh on a second occasion. She also testified that she remembered being forensically interviewed, that she told the truth during that interview, and that her memory of the events was better at the time of the interview than it was at trial. The State later moved to play portions of her forensic interview as a recorded recollection under Rule 803(5), and the court granted the State's request. Ordway argues that the court abused its discretion by allowing the State to publish segments of the forensic interview with M.V. under Rule 803(5). *See* Ariz. R. Evid. 803(5).

¶48        Rule 803(5) excepts from the hearsay rule a statement "on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately . . . was made or adopted by the witness when the matter was fresh in the witness's memory . . . [and] accurately reflects the witness's knowledge." Ariz. R. Evid. 803(5). In granting the State's request to play portions of M.V.'s forensic interview, the court found that

she "was unable to fully testify regarding those events," that she "adopted those previous statements," "[i]ndicated she was truthful when she made" them, and "indicated that her memory was better at the time . . . the forensic interview" was conducted." The record supports these findings, which satisfy the requirements of Rule 803(5). *See*, *e.g.*, *State v. Alatorre*, 191 Ariz. 208, 211-12, ¶¶ 9-10 (App. 1998) (holding that trial court did not abuse its discretion in admitting recording of 8-year-old victim's police interview because victim's trial testimony about her "diminished" memory satisfied Rule 803(5)), *abrogated in part on other grounds by State v. Ferrero*, 229 Ariz. 239 (2012). The superior court did not err in admitting portions of M.V.'s forensic interview.

### E.      Ruling on Rebuttal Testimony of K.W.'s Mother

**¶49**        K.W. testified that when she and her mother met with Balliet, she told Balliet that Ordway had touched her leg in a manner that made her uncomfortable. When called as a defense witness, Balliet testified that K.W. told him that Ordway "poke[d] girls in the ribs" and "play[ed] with their hair," but denied that K.W. disclosed that he touched her leg. In rebuttal, the State called K.W.'s mother, who testified that during their meeting with Balliet, she observed K.W. "demonstrate[] where she had been touched on her legs." Ordway argues that the superior court erred in allowing K.W.'s "mother to testify about [K.W.'s] physical demonstration" of Ordway's conduct during the meeting with Balliet. The demonstration was "clearly intended as an assertion," Ordway argues, and "thus was non-verbal conduct that fell within the hearsay rule." The State responds that K.W.'s mother's testimony was admissible to impeach Balliet's testimony and rebut the inference that K.W. must have recently fabricated the allegation that Ordway touched her leg because she purportedly did not disclose it to Balliet.

**¶50**        A witness's testimony about his or her observation of a material event is always subject to impeachment by the testimony of another observer. *See Pub. Serv. Co. of Okla. v. Bleak*, 134 Ariz. 311, 324 (1982) ("Impeachment by contradiction is a well-recognized practice." (citation omitted)). Moreover, a declarant's out-of-court statement is admissible if offered as a prior consistent statement to rebut an express or implied charge of recent fabrication. Ariz. R. Evid. 801(d)(1)(B)(i). Because K.W. testified that she disclosed to Balliet that Ordway had touched her leg and Balliet denied that K.W. made any such disclosure, the testimony of K.W.'s mother, who was present during their conversation, was admissible to support K.W.'s testimony and impeach Balliet's. Ordway is not entitled to relief.

III.     **Sufficiency of the Evidence**

**¶51**          Ordway argues there is insufficient evidence to support his convictions. We review the sufficiency of evidence de novo. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011) (citation omitted). In doing so, we review the evidence presented at trial to determine if "substantial evidence exists to support the jury verdict." *State v. Pena*, 235 Ariz. 277, 279, ¶ 5 (2014) (citation omitted). "Substantial evidence is evidence that 'reasonable persons could accept as sufficient to support a guilty verdict beyond a reasonable doubt.'" *Id.* (quoting *State v. Hausner*, 230 Ariz. 60, 75, ¶ 50 (2012)). Substantial evidence must support each element of the crime charged. *West*, 226 Ariz. at 562, ¶ 16. Because "the credibility of witnesses" is "exclusively for the jury" to decide, we do not re-weigh evidence on appeal. *State v. Buccheri-Bianca*, 233 Ariz. 324, 334, ¶ 38 (App. 2013).

**¶52**          "A person commits molestation of a child by intentionally or knowingly engaging in or causing a person to engage in sexual contact . . . with a child who is under fifteen years of age." A.R.S. § 13-1410(A). "Sexual contact," in turn, is defined to include "direct or indirect touching, fondling or manipulating of any part of the genitals . . . by any part of the body or by any object." A.R.S. § 13-1401(A)(3)(a). A person commits attempted molestation of a child if he intentionally does "anything which, under the circumstances as such person believes them to be, is any step in a course of conduct planned to culminate in" the molestation of a child. *See* A.R.S. § 13-1001(A)(2). As relevant here, a person commits an aggravated assault by "knowingly touching [the victim] with the intent to injure, insult or provoke," A.R.S. § 13-1203(A)(3), when "the person is eighteen years of age or older" and the victim is "a minor under fifteen years of age," A.R.S. § 13-1204(A)(6).

**¶53**          Ordway was charged with three crimes against A.A.: two counts of molestation and one count of aggravated assault. Ordway was acquitted of both molestation counts. Ordway argues that insufficient evidence supports his aggravated assault conviction because this conviction is based on the same underlying conduct as the charges of which he was acquitted.

**¶54**          A.A. testified about three occasions when Ordway touched her as she sat next to him at his desk. The first time, she stated, he "rubb[ed]" her thigh with "[h]is hands" in "a[n] up and down rubbing motion." On two subsequent occasions, she stated, he not only rubbed her thigh but touched her vagina. Although the jury found Ordway not guilty of the molestation counts (which related to the alleged touching of A.A.'s

vagina), A.A.'s testimony about the first incident is sufficient to support Ordway's conviction for aggravated assault. *See* A.R.S. § 13-1203(A)(3); *State v. Manzanedo*, 210 Ariz. 292, 293, ¶ 3 (App. 2005) (stating that testimony of a single witness is sufficient evidence to support a conviction, even if uncorroborated). Ordway's acquittal of molestation does not preclude his conviction for aggravated assault that occurred on a prior occasion.

¶55 Ordway next argues that insufficient evidence supports his convictions for aggravated assault against J.H. or K.W. because both admitted, on cross-examination, that Ordway could have intended to touch them merely in a "joking" or "playful" manner.

¶56 If jurors could reasonably differ about whether the evidence establishes the elements of the charged crime, that evidence is sufficient to support a conviction. *See State v. Davolt*, 207 Ariz. 191, 212, ¶ 87 (2004) (quotation omitted). Here, J.H. testified about an occasion when she was called up to Ordway's desk and sat next to him. He began "[p]laying with" her hair, she stated, then put his hand "on [her] leg" and "rub[bed] it." Although she acknowledged that his hand was on her leg "for only a few seconds" and that he may have been "trying to be funny," she also testified that touching her leg "made [her] uncomfortable." Similarly, K.W. testified that when she sat next to Ordway while the class watched a movie, he "put his hand" on her "lower thigh" and "kept it there." When asked on cross-examination if Ordway "could have been" acting in a "playful" manner, she responded, "I'm not sure." She also testified that she "didn't feel comfortable" when he touched her leg. Though differing conclusions might have been drawn from their testimony, the weighing of testimony is the province of the jury. *State v. Williams*, 209 Ariz. 228, 231, ¶ 6 (App. 2004) (citation omitted). The testimony of J.H. and K.W. was sufficient to support Ordway's conviction for aggravated assault.

¶57 Ordway argues that his conviction for attempted molestation of M.M. is supported by insufficient evidence because M.M. "specified any contact with her genitals was not intentional" and so, because "there was no evidence of intent, [he] could not have been found guilty."

¶58 M.M. testified that she sat next to Ordway while the class watched a movie, and he put his hand "[r]ight above the knee," "started rubbing in a circular motion on [her] thigh," and "slid" his hand "upwards" until his fingers made "a brushing motion" against her "genitals." When asked if he touched her there on purpose, M.M. replied, "It wasn't intentional-intentional, but it could have been avoided." But whether M.M. believed Ordway acted intentionally or not is irrelevant; it is for the jury,

not a witness, to determine whether the defendant acted with the requisite state of mind. *See State v. Rivera*, 152 Ariz. 507, 514 (1987) (citations omitted) (noting that "the jury . . . determine[s] the defendant's intent at the time of the alleged crime"). M.M.'s testimony, and inferences therefrom, were sufficient for a reasonable jury to find Ordway guilty of attempted molestation of a child. *See State v. Lopez*, 163 Ariz. 108, 112 (1990).

**¶59** Finally, Ordway argues that all of his convictions are fatally infirm because "there was insufficient evidence produced by independent witness recollection to support conviction on any count." The victims had "little to no independent recollection . . . of anything that occurred," he maintains, and so he was improperly convicted "based almost entirely on forensic interviews" rather than "live testimony."

**¶60** When a witness's memory fails, Rule 612 allows the use of writings to refresh his or her memory while testifying. Ariz. R. Evid. 612(a)(1). Here, certain victims were initially unable to recall details of events they were asked about but were able to testify on those matters after their memories were refreshed upon reviewing transcripts of their prior recorded statements. Rule 612 authorized the admission of their testimony after their recollections were refreshed. Further, Rule 803(d)(1)(B)(i) authorized the playing of the recordings of the forensic interviews of T.H. and E.D., *see supra* ¶¶ 44-45, and Rule 803(5) authorized the playing of the recording of M.V.'s forensic interview, *see supra* ¶¶ 47-48. A jury may base its verdict on any evidence properly admitted at trial. The weight to give to the evidence is for "[t]he finder-of-fact, not the appellate court," to determine. *See State v. Cid*, 181 Ariz. 496, 500 (App. 1995); *see also Williams*, 209 Ariz. at 231, ¶ 6 ("Appellant's arguments regarding the sufficiency of the evidence go merely to weight and credibility. However, we do not weigh the evidence; that is the function of the jury." (citation omitted)). We reject as baseless Ordway's challenge to the weight or sufficiency of evidence that was properly admitted.

IV. **Sentencing**

A. **Finding That the Offenses Were Not Committed on the Same Occasion**

**¶61** The jury convicted Ordway of one count of aggravated assault against M.A. and another count of aggravated assault against T.H. The court imposed consecutive sentences on these counts after determining that the two offenses were not committed on the same occasion. Ordway argues the superior court erred in not allowing the jury to make that

determination. Noting that the indictment lists the same dates of offense for both counts, Ordway asserts that neither victim testified "as to the specific date or time frame when the offense occurred," and therefore the two offenses "could have occurred on the same date, even within minutes of each other." In the absence of "clear evidence that these two counts were committed on different occasions," Ordway concludes, the court erred in not leaving that determination to the jury. The State argues that this determination was inherent in the jury verdicts, and thus the superior court did not err. *Cf. State v. Gatliff*, 209 Ariz. 362, 365-66, ¶¶ 17-18 (App. 2004) (noting no separate dangerousness finding required when dangerousness inherent in offense).

¶62        "The right to a jury trial extends to any finding that would increase a person's sentence beyond the sentence that would otherwise be authorized by the verdict alone." *State v. Porter*, 258 Ariz. 590, 593, ¶ 9 (App. 2024) (citation omitted), *depublished in part*, 567 P.3d 1287 (Ariz. 2025). Because being convicted of multiple offenses not committed on the same occasion exposes a defendant to enhanced minimum sentences, *see* A.R.S. § 13-703, whether offenses are committed on the same occasion is generally a question for the jury unless that finding is inherent in the jury's verdicts. *Cf. Gatliff*, 209 Ariz. at 365-66, ¶¶ 17-18 (affirming "dangerousness" enhancement of defendant's sentence for arson of an occupied structure despite the absence of "[a] separate jury finding of dangerousness" because "dangerousness is by definition inherent in the crime"). Factors to consider when determining whether multiple offenses were committed on the same occasion include: "1) time, 2) place, 3) number of victims, 4) whether the crimes were continuous and uninterrupted, and 5) whether they were directed to the accomplishment of a single criminal objective." *State v. Kelly*, 190 Ariz. 532, 534, ¶ 6 (1997).

¶63        Here, the two counts of aggravated assault were alleged to have been committed against two different victims, M.A. and T.H. A determination that the aggravated assaults on two different victims were not committed on the same occasion was inherent in the jury's verdicts. *See State v. Flores*, 236 Ariz. 33, 36, ¶ 9 (App. 2014) ("[W]e have found no Arizona case concluding that offenses were committed on the same occasion when the crimes were committed on different days, involved different property, or had unrelated victims." (citations omitted)); *see also State v. Williams*, 169 Ariz. 376, 380-81 (App. 1991) (holding that defendant's offenses, which included escaping from prison, stealing items from a parked vehicle, and assaulting the driver of another car, were not committed on same occasion even though "all the crimes were completed in five hours"). Ordway has shown no error.

### B.     Imposition of Consecutive Sentences

¶64        Next, Ordway argues the superior court erred by failing to explain why it imposed consecutive sentences as required by A.R.S. § 13-711(A). He urges us to "suspend the appeal" and "revest jurisdiction in the trial court" to comply with the statute.

¶65        Section 13-711(A) provides that "if multiple sentences of imprisonment are imposed on a person at the same time . . . [the sentences] may run consecutively or concurrently, as determined by the court. The court shall state on the record the reason for its determination." A.R.S. § 13-711(A). The superior court errs when it fails to substantially comply with A.R.S. § 13-711(A) by identifying the factors it considered and explaining how those factors led to the court's sentencing determination. *State v. Perez-Gutierrez*, 257 Ariz. 334, 338, ¶ 16 (2024) (citations omitted). "A trial judge's reasons for imposing consecutive sentences" are reviewed for an abuse of discretion. *Id.* at 337, ¶ 9 (citation modified).

¶66        Before imposing sentence, the court noted that it found "significant mitigation" in Ordway's "family support," "community support," and past military service. The court also found, however, that "each victim suffered individual harm." The court went on to find that "the totality of circumstances calls for" the sentences "to run consecutively." Viewed in context, the court's comments at sentencing satisfied A.R.S. § 13-711(A) by identifying the competing factors that the court weighed before deciding to impose consecutive sentences. We conclude that the superior court substantially complied with A.R.S. § 13-711(A), and Ordway is not entitled to relief on this ground.

### CONCLUSION

¶67        For the foregoing reasons, we affirm.



MATTHEW J. MARTIN • Clerk of the Court
FILED:          JR